# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSHUA DAVID MARTINEZ, § | | |
|     Petitioner § | | |
| § | | |
| VS. § | | C.A. NO. C-08-268 |
| § | | |
| NATHANIEL QUARTERMAN, § | | |
| Director, Texas Department of Criminal § | | |
| Justice–Correctional Institutions Division § | | |
|     Respondent § | | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") and currently is incarcerated at the McConnell Unit in Beeville, Texas. Proceeding *pro se* and *in forma pauperis,* petitioner filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on August 14, 2008 (D.E. 1). Petitioner made the following due process claims in reference to a disciplinary hearing held at the McConnell Unit which resulted in the imposition of punishment: (1) The disciplinary hearing officer ("DHO") should not have heard the case because she had a conflict of interest and (2) There was insufficient evidence to support a finding of guilt. Respondent filed a motion for summary judgment on October 23, 2008 (D.E. 17) to which petitioner responded on November 5, 2008 (D.E. 21). Also pending is petitioner's motion for an evidentiary hearing (D.E. 20).

## JURISDICTION

Jurisdiction and venue are proper in this court because petitioner is incarcerated in the Corpus Christi Division of the Southern District of Texas.  28 U.S.C. 2241(d); Wadsworth v. Johnson, 235 F.3d 959 (5th Cir. 2000).

## BACKGROUND

Petitioner currently is serving three concurrent 30-year sentences for aggravated robbery and a three-year sentence for possessing a prohibited item in a correctional facility (D.E. 17, Ex. A).  He does not complain about his holding convictions, but challenges the results of a disciplinary hearing.  In disciplinary case number 20080228753 petitioner was accused and found guilty of possessing a weapon intended to be used to injure another person, namely a piece of metal sharpened at both ends, approximately three inches long.  In addition, petitioner was accused of possessing gambling paraphernalia in the form of gambling tickets paid with stamps (Disp. Recs., D.E. 18, p. 1).

In the offense report, the charging officer wrote that he discovered a three-and-one-half inch piece of metal sharpened at both ends during a search of petitioner's cell. The piece of metal was stuck to the underside of petitioner's metal table with a magnet. The officer also found gambling paraphernalia described as gambling tickets attached to a note and some stamps (Disp. Recs., D.E. 18, p. 2). During the preliminary investigation petitioner stated, "It wasn't a weapon.  It was a screwdriver." (Id. at 3).

At the hearing, the charging officer testified via telephone that he had received information that petitioner had a weapon in his cell. The officer searched the cell and discovered the piece of metal. Petitioner testified that he did have a screwdriver with a triangle head on one end and a phillips head on the other end but it was not made to hurt anyone (Id. at 9).

Petitioner was found guilty based on the charging officer's report and petitioner's admission that the piece of metal was his (Id. at 1). Petitioner was punished with the loss of 15 days of recreation time and 30 days of commissary time and was forced to remain in line class three. He did not lose any good time (Id.).

On May 8, 2008 petitioner filed a Step 1 grievance, arguing that the DHO had a conflict of interest and should not have presided over the disciplinary hearing because she had participated in the decision to downgrade his classification status from Level 1 to Level 3. He also argued that the metal item found was a screwdriver and that it was not designed to harm anyone but rather to dismantle objects. In addition, petitioner argued that he should not have been found guilty on the gambling charge because the stamps were not submitted as evidence in the disciplinary case (Disp. Grv. Rec., D.E. 18, pp. 3-4). Petitioner received a response from Warden Jackson on May 29, 2008 telling him that the action taken and penalty imposed were within the disciplinary guidelines, no procedural errors were noted and the decision of the hearing officer would stand (Id. at 4).

On June 14, 2008 petitioner submitted a Step 2 grievance arguing that the evidence was insufficient to support a determination of guilt because there was no evidence that petitioner had the intent to harm anyone. He said the metal piece came from a fan he bought in the commissary and he made a screwdriver with it so that he could repair typewriters, fans and other small appliances (Id. at 1-2). Petitioner received a reply from Assistant Administrator Brisher on July 26, 2008, telling him that the case had been reviewed, petitioner's points of appeal were found to be without merit, there was sufficient evidence of a finding of guilt, there were no apparent due process errors and the decision of the hearing officer would stand (Id. at 2).

Petitioner filed the instant law suit on August 14, 2008. In his motion for summary judgment, respondent argues that petitioner is not entitled to relief because (1) the petition is second or successive; (2) one of petitioner's claims is unexhausted and procedurally defaulted and (3) he has failed to state a cognizable claim for habeas relief. Petitioner counters (1) that his cause of action is not second or successive; (2) that he fully exhausted his administrative remedies and (3) his due process rights were violated by the disciplinary hearing officer.

## APPLICABLE LAW

**A. Second or Successive**

Petitioner filed this petition on August 14, 2008 and it is subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996). Williams v. Cain, 125 F.3d 269, 274 (5th Cir.

1997).  The adoption of the AEDPA made it "significantly harder for prisoners filing second or successive federal habeas applications under 28 U.S.C. § 2254 to obtain hearings on the merits of their claims."  Graham v. Johnson, 168 F.3d 762, 772 (5th Cir. 1999).  Pursuant to 28 U.S.C. § 2244(b)(3)(A), before a second or successive application is filed in the district court, the applicant must move in the court of appeals for an order authorizing the district court to consider the application.  "Indeed, the purpose of [§ 2244(b)] was to eliminate the need for the district courts to repeatedly consider the challenges to the same convictions unless an appellate panel first found that those challenges had some merit."  United States v. Key, 205 F.3d 773, 774 (5th Cir. 2000)(citing In re Cain, 137 F.3d 234, 235 (5th Cir. 1998)).

     A prisoner's application is not second or successive simply because it follows an earlier federal petition.  In re Cain, 137 F.3d at 235.  Rather, a petition is "second or successive" if it raises a ground that was or could have been raised in an earlier petition, or if it otherwise constitutes an abuse of the writ.  United States v. Orozco-Ramirez, 211 F.3d 862, 867 (5th Cir. 2000).  Respondent argues that petitioner's habeas action is second or successive because he could have raised the claims in an earlier habeas action he filed, Martinez v. Quarterman, No. 2:08cv166 (S.D. Tex. Oct. 28, 2008).

     The earlier case, filed by petitioner on May 21, 2008, addressed an unrelated disciplinary hearing where petitioner alleged his constitutional rights were violated.  Respondent argues that petitioner could have brought his current claims in that lawsuit because the claims accrued on May 2, 2008, prior to the filing of the first petition.

However, respondent is mistaken. Although the disciplinary hearing in the instant matter was held on May 2, 2008, petitioner's cause of action was not ripe until he exhausted his administrative remedies, which occurred when he received the response to his Step 2 grievance on June 26, 2008. Because petitioner could not have properly filed his second habeas at the time he filed his first action, it is not second or successive and should not be dismissed on that ground.

## B. Exhaustion and Procedural Bar

Respondent argues that petitioner did not properly exhaust his administrative remedies and because it is now too late for him to do so, his claim is procedurally barred. Before a federal court can grant an application for writ of habeas corpus, an applicant must have exhausted the remedies available in the courts of the state. 28 U.S.C. § 2254(b)(1). "To exhaust available state remedies, a habeas petitioner must fairly apprise the highest court of his state of the federal rights which were allegedly violated." Shute v. State of Texas, 117 F.3d 233, 237 (5th Cir. 1997)(internal quotations omitted). But, because Texas state courts do not review claims of lost good time or other results of prison disciplinary proceedings, a petitioner is required to pursue his claims through the administrative appeals process rather than state court. Ex Parte Palomo, 759 S.W.2d 671, 674 (Tex. Crim.App. 1988); Ex parte Brager, 704 S.W.2d 46 (Tex. Crim. App. 1985). The exhaustion requirement is mandatory and the administrative grievance procedure must be completed before a prisoner can file a law suit in federal court. Underwood v. Wilson, 151 F.3d 292 (5th Cir. 1998). Notwithstanding a petitioner's failure to exhaust

state remedies, an application for a writ of habeas corpus may be denied on the merits. 28 U.S.C. § 2254(b)(2).

The Fifth Circuit discussed how much detail is necessary in a prison grievance form in <u>Johnson v. Johnson</u>, 385 F.3d 503 (5th Cir. 2004). The Court noted that it has given relatively little guidance on what a prisoner must say in a grievance to properly exhaust his claims and added that as a general matter, courts typically use a standard according to which a grievance should give prison officials fair notice of the problem that will form the basis of the prisoner's suit.

> In deciding how much detail is required in a given case, we believe that a court must interpret the exhaustion requirement in light of its purposes, which include the goal of giving officials time and opportunity to address complaints internally. Thus, a grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit.

<u>Id.</u> at 516-517 (internal quotations and citations omitted). The court added that the prison system's own rules regarding grievances provide both inmates and the courts with more specific guidance and noted that because prisoners generally are required to follow the procedures adopted by the state prison system, the specificity requirement should be interpreted in light of the grievance rules of the particular prison system. <u>Id.</u> at 517.

Respondent argues that petitioner did not exhaust his claim that the hearing officer was biased because he did not raise it in his Step 2 grievance, but only in his Step 1 grievance. Petitioner responded that because he was required to attach a copy of his Step 1 grievance to his Step 2 grievance, prison authorities had knowledge of all his

allegations. A review of the grievances shows that petitioner explained why he was dissatisfied with the disciplinary hearing process in his grievances, both because of the alleged bias of the hearing officer and the alleged insufficiency of the evidence. Accordingly, the grievances were sufficient to give prison officials an opportunity to review the disciplinary hearing procedure to see whether it comported with due process. Indeed, it appears that not only did prison authorities understand petitioner's complaints, they conducted an investigation into the disciplinary hearing procedures and determined that no due process violation had occurred (Disp. Grv. Recs., D.E. 18, pp. 1-4). Petitioner provided a sufficient factual basis to allow prison authorities a fair opportunity to address the basis of his complaint. Accordingly, respondent's argument that petitioner failed to exhaust his administrative remedies is without merit. Petitioner's cause of action should not be dismissed for failure to exhaust his administrative remedies.

## C. Due Process Rights

Respondent also argues that petitioner failed to state a claim that his constitutional rights were violated. In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States. In Sandin v. Conner, 515 U.S. 472, 483-484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), the U.S. Supreme Court described the limited instances in which prison inmates can make out a claim that a liberty interest has been taken without due process.

> The time has come to return to the due process principles we believe were correctly established and applied in [Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963 (1974)] and [Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532

> (1976)]. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. (internal citations omitted). The Supreme Court held in Sandin that confinement in disciplinary segregation for twenty-three hours and ten minutes per day "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Sandin, 515 U.S. at 486, 115 S.Ct. at 2301. The Court focused on the nature of the liberty interest at issue, finding that conditions of disciplinary segregation did not differ significantly from conditions in administrative segregation and protective custody. Id.

### 1. Line Class

To the extent petitioner is complaining about a reduction in line class, he fails to state a basis of relief. Generally a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on his eligibility for parole and in turn, on the amount of time he is in custody. Even so, "such speculative, collateral consequences do not create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192 (5th Cir. 1995)(citing Meachum v. Fano, 427 U.S. 215, 229, n. 8, 96 S.Ct. 2532, 2540, n. 8, 49 L.Ed.2d 451 (1976)), cert. denied sub nom. Luken v. Johnson, 116 S.Ct. 1690 (1996). "'Prisoners have no protectable property or liberty interest in custodial classifications.'" Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)(citing

Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998)). See also Malchi v. Thaler, 211 F.3d 959 (5th Cir. 2000)(holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating). Accordingly, petitioner has failed to state a claim based on his reduction in line class.

### 2. Mandatory Supervision

In addition to the parole scheme in Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and control of the pardons and paroles division. Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997) (citing TEX. CODE CRIM. P. ANN. art. 42.18 § 2(2)). Prisoners earn good time credits which are added to their actual days served in prison to calculate their release date. TEX. GOV'T CODE ANN. §508.147 (Vernon 2002). The Fifth Circuit has determined that prisoners have a constitutional expectation of early release under the mandatory supervision program and therefore have a liberty interest with respect to their good time credit. Teague v. Quarterman, 482 F.3d 769, 777 (5th Cir. 2007).

However, some inmates are not eligible for release to mandatory supervision because of the nature of their offense. Petitioner is not eligible for release to mandatory supervision because he was convicted of aggravated robbery (D.E. 17, Ex. A). See TEX. PENAL CODE § 29.03 and TEX. Gov't CODE § 508.149(a)(12)(West 1998). Moreover,

petitioner did not lose any good time credits. Because he did not lose any good time and because he is not eligible for release to mandatory supervision, he has failed to make out a claim that he is entitled to habeas corpus relief.

### 3. Other Punishment

Petitioner also lost commissary and recreation privileges for 15 and 30 days, respectively. Petitioner did not have a liberty interest in any of these privileges because they do not impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Accordingly, he cannot state a claim based on this loss of privileges. Summary judgment should be entered for respondent on all of petitioner's claims.

## B. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Slack v. Daniel, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In petitioner's case, it is recommended that his cause of action be dismissed on the merits. If the district court orders that petitioner's cause of action be dismissed and petitioner seeks a COA in order to proceed with his case, it is further recommended that

the COA be denied because reasonable jurists would not find it debatable that petitioner has failed to state a claim.

## RECOMMENDATION

Based on the foregoing, it is recommended that respondent's motion for summary judgment (D.E. 17) be granted in part and denied in part. Petitioner's cause of action should not be dismissed as second or successive or because he failed to exhaust his administrative remedies. However, his cause of action should be dismissed on the merits for failure to state a claim. In addition, petitioner's request for an evidentiary hearing (D.E. 20) should be denied. In the event petitioner seeks a Certificate of Appealability, it is recommended that it be denied.

Respectfully submitted this 12th day of December, 2008.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).